# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEROME L. WEATHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-00410-TWP-TAB |
| | ) | |
| CAROLYN COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Jerome L. Weathington ("Mr. Weathington") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") , Widower's Insurance Benefits ("WIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act") (Dkt. 1).  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.   BACKGROUND

### A.    Procedural History

On June 13, 2005, Mr. Weathington applied for DIB and SSI, alleging a disability onset date of April 22, 2005.  Mr. Weathington's applications were denied initially on October 18, 2005, and upon reconsideration on February 20, 2006.  Thereafter, Mr. Weathington filed a request for a hearing on March 30, 2006, and appeared before Administrative Law Judge Ronald Jordan ("the ALJ") on March 17, 2008.  Mr. Weathington was represented by counsel at the hearing.  On August 6, 2008, the ALJ denied Mr. Weathington's applications.  Mr. Weathington filed subsequent claims for Titles II and XVI benefits on October 1, 2008 and October 9, 2008.

The October 1, 2008 subsequent claim was filed under Mr. Weathington's recently deceased spouse's social security number. The ALJ determined the subsequent claims were duplicates of the original claims and indicated the ALJ would associate the claim files and issue a new decision on the associated claims. On October 15, 2009, the Appeals Council vacated the ALJ's August 6, 2008, decision and remanded the case to the ALJ. Mr. Weathington appeared before the ALJ a second time on February 1, 2010. Mr. Weathington was represented at this hearing.[1] On September 24, 2010, the ALJ again denied Mr. Weathington's applications. On February 1, 2012, the Appeals Council denied Mr. Weathington's request for review of the ALJ's second decision, thus making that the final decision of the Commissioner for the purposes of judicial review. Mr. Weathington filed a civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.      Factual Background**

Mr. Weathington is a high school graduate, born in 1956 and was forty-nine (49) years old at his onset date. Mr. Weathington had past relevant work as a housekeeper, laundry worker, laborer, maintenance worker, fast food worker, carpenter, cook, assembler, and HVAC worker. Mr. Weathington testified that in 2005, he had to stop working in maintenance, due to back pain. He also reported that he had problems with people telling him what to do since he had been in the service. Mr. Weathington described that he suffers from spinal impairment, obstructive sleep apnea, hypertension, obesity, borderline personality disorder, post-traumatic stress disorder, amnestic disorder, cognitive disorder, depression, and anxiety.

---

[1] The record is not entirely clear on this point. The ALJ's opinion states Mr. Weathington was represented by a non-attorney representative, Joseph Kilroy, and makes no reference to an attorney representative. Tr. at 15. However, the cover page for the transcript from the February 1, 2010, hearing indicates an appearance by Joseph Binder, representative for Mr. Weathington, and makes no reference to a Joseph Kilroy. Tr. at 1570. While the Court is uncertain about who actually represented Mr. Weathington, it is not relevant to the issues before the Court; but, it suffices to say that Mr. Weathington had representation of some kind at his February 1, 2010, hearing.

### 1.      Veterans Affairs Medical Evidence

In March 2005, Mr. Weathington sought treatment for chronic low back pain, a history of drug dependence, and hypertension.  A 2005 magnetic resonance imaging ("MRI") showed mild disc bulging with some spinal canal narrowing and physical examinations generally revealed tenderness and moderately reduced range of motion in Mr. Weathington's low back, but normal strength, sensation, reflexes, gait, and muscle tone.  In July 2005, a mental status examination revealed a restricted affect, and slow movements and ambulation with a cane.  Mr. Weathington was diagnosed with substance abuse in remission, depression versus mood disorder due to general medical condition, and rule-out personality disorder.   On March 22, 2006, the Department of Veteran's Affairs ("the VA") found Mr. Weathington was entitled to non-service connected disability benefits for sleep apnea, amnestic and personality disorders and hypertension.  The VA *denied* Mr. Weathington's application for service-connected disability for chest pain, back pain, depression, and a heart murmur (Tr. 1304-07). The VA awarded these benefits because it identified that Mr. Weathington showed an inability "to secure and follow a substantially gainful occupation due to disability."

### 2.      Dr. Gagliardi

Dr. Gary Gagliardi, M.D. ("Dr. Gagliardi"), began treating Mr. Weathington in early 2008.  Mr. Weathington complained of chronic low back pain, and Dr. Gagliardi found that Mr. Weathington's thigh flexor was limited by low back pain.  Dr. Gagliardi also suspected that depression and anxiety played a role in Mr. Weathington's back pain.  On February 27, 2009, Dr. Gagliardi filled out a Multiple Impairment Questionnaire and rated Mr. Weathington's pain as 7 on a 10-point scale.  Dr. Gagliardi also indicated that Mr. Weathington could only sit for one

hour and stand or walk for zero to one hour in an eight-hour workday, would need to get up and move around every forty-five to fifty minutes for ten to fifteen minutes at a time, and probably could not stand or walk continuously in a work setting.  Additionally, Dr. Gagliardi opined that Mr. Weathington had significant limitations in his ability to reach due to pain in his biceps and that Mr. Weathington's pain, fatigue, or other symptoms were constantly severe enough to interfere with his attention and concentration.  Lastly, Dr. Gagliardi indicated that he expected Mr. Weathington's impairments to continue for at least twelve months.

On October 15, 2009, Dr. Gagliardi diagnosed Mr. Weathington with myalgias and prescribed Flexeril.  On October 19, 2009, Mr. Weathington's physical therapist, Dr. Jessica C. Babbitt, indicated that Mr. Weathington's back pain had decreased to 5 on a 10-point scale and his bicep pain had decreased by 50%.  On December 1, 2009, Mr. Weathington complained of chronic low back pain with right lower extremity pain, and Dr. Gagliardi recommended an MRI and an electromyogram ("EMG").  The EMG showed evidence of chronic right S1 radiculopathy.  On December 11, 2009, Dr. Gagliardi completed a second Multiple Impairment Questionnaire that showed Mr. Weathington's pain increased to 8 on a 10-point scale, and he indicated Mr. Weathington would need to miss more than three days of work a month.

### 3. Dr. Tarr

On November 21, 2008, Dr. David Tarr, Ph.D. ("Dr. Tarr"), reviewed a Minnesota Multiphasic Inventory taken by Mr. Weathington and, despite finding that it was "probably invalid," diagnosed Mr. Weathington with post-traumatic stress disorder; generalized anxiety disorder; and personality disorder with narcissistic, borderline, and avoidant features.  Tr. 784-85.  Dr. Tarr attributed the potential invalidity to poor reading skills based on Mr. Weathington's limited educational background.  Tr. 784.

4

Dr. Tarr completed a Psychiatric/Psychological Impairment Questionnaire on October 5, 2009. In the questionnaire, he confirmed his diagnoses from 2008 and noted that Mr. Weathington's conditions markedly limited his ability to make simple work-related decisions.

**4.      Dr. Smith-Gamble**

Dr. Valarie Smith-Gamble, M.D. ("Dr. Smith-Gamble"), began treating Mr. Weathington on January 13, 2006 and she diagnosed Mr. Weathington with amnestic disorder and a history of polysubstance abuse.  On January 23, 2006, Dr. Smith-Gamble noted evidence of a dysphoric mood and affect and prescribed Zoloft and Trazodone.  On March 14, 2006, Dr. Smith-Gamble reported no changes in Mr. Weathington's condition.  On November 13, 2007, Mr. Weathington reported to Dr. Smith-Gamble an account of sexual assault that had occurred while he served in the Armed Forces in Vietnam.

On November 21, 2008, Dr. Smith-Gamble completed a Psychiatric/Psychological Impairment Questionnaire.  She diagnosed Mr. Weathington with post-traumatic stress disorder, history of polysubstance abuse in remission, amnestic disorder, and personality disorder and identified that Mr. Weathington's diagnoses caused moderate limitations on his ability to engage in daily mental activities. On October 2, 2009, Dr. Smith-Gamble completed a second Psychiatric/Psychological Impairment Questionnaire after Mr. Weathington indicated his lawyers wanted a "different opinion."  Tr. at 27, 1391.  In this questionnaire, Dr. Smith-Gamble relied on essentially the same source statement as she did in the first questionnaire, yet she reached a different result.  Tr. at 27.

## II.  <u>DISABILITY AND STANDARD OF REVIEW</u>

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).  In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform his past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At step five, if the claimant can perform any other work in the national economy, he is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred.  *Dixon v.*

*Massari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 42 U.S.C. § 405(g).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Dixon*, 270 F.3d at 1176.  Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome."  *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.   THE ALJ'S DECISION

As an initial matter, the ALJ found that Mr. Weathington met the insured status requirement of the Act for DIB through December 31, 2010.  At step one, the ALJ found that Mr. Weathington had not engaged in substantial gainful activity since April 22, 2005.  The ALJ found Mr. Weathington worked after April 22, 2005, but that the work had not amounted to substantial gainful activity.  However, the ALJ indicated Mr. Weathington's wage total of $1,663.45 in 2006 from the AARP Foundation cast doubt on the alleged severity of Mr. Weathington's symptoms, if not the existence of the underlying impairments.  At step two, the ALJ found that Mr. Weathington had the following severe impairments: degenerative disc

disease, obesity, and psychological impairment variously diagnosed as amnestic disorder, personality disorder, cognitive disorder, depression, anxiety, and post-traumatic stress disorder. The ALJ also found that Mr. Weathington had the following non-severe impairments: obstructive sleep apnea and chest pains.

At step three, the ALJ found that Mr. Weathington does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Mr. Weathington had the RFC to perform a range of light work, including lifting, carrying, pushing, or pulling twenty pounds occasionally and ten pounds frequently; standing and walking or sitting up to six hours out of an eight-hour day; and occasionally stooping, crouching, crawling, kneeling, balancing and climbing stairs or ramps. The ALJ also noted Mr. Weathington should be limited to work involving simple and repetitive tasks where he has no contact with the general public and only occasional, superficial contact with coworkers and supervisors after his initial training period. At step four, the ALJ found Mr. Weathington is capable of performing his past relevant work. At step five, the ALJ found that considering Mr. Weathington's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform; thus he is not disabled for the purposes of the Act from his alleged onset date through the date of the ALJ's decision.

## IV.   <u>DISCUSSION</u>

Mr. Weathington raises three issues in his appeal that he claims constitute reversible error. First, he argues that the ALJ did not give proper weight to treating physicians Drs. Gagliardi, Smith-Gamble, and Tarr when determining his RFC. Second, he argues that the ALJ failed to weigh the VA's disability determination. Third, he argues that the ALJ erred in his

credibility determination in evaluating the Vocational Expert's ("VE") testimony that Mr. Weathington could perform his past relevant work as a housekeeper and assembler. The Court finds that the ALJ possessed substantial evidence to discredit Drs. Gagliardi, Tarr, and Smith-Gamble, discredit the VA's finding of a disability, and find an RFC of "light work." The Court also finds that the ALJ's hypothetical to the VE was proper. Thus, the final decision of the Commissioner is **AFFIRMED**.

**A.     The ALJ's findings regarding the credibility of Drs. Gagliardi, Tarr, and Smith-Gamble were supported by substantial evidence.**

Mr. Weathington asserts that the ALJ did not give appropriate weight to the medical opinion of treating physician Dr. Gagliardi. Dr. Gagliardi identified significant limitations on Mr. Weathington's ability to sit, stand, and attend work in large part due to back pain. In addition to Mr. Weathington's claims of physical disability due to back pain, he has also alleged a disability due to mental impairments and he argues the ALJ did not properly consider the nature and severity of his mental impairments in light of findings by treating physicians Drs. Tarr and Smith-Gamble. The ALJ found that Mr. Weathington's impairments could reasonably be expected to cause his alleged symptoms of pain, decreased memory, and ability to concentrate, but also found the record did not support Mr. Weathington's claims concerning the intensity, persistence, and limiting effects of those symptoms to the extent they indicated Mr. Weathington could not perform light work. As such, the ALJ sufficiently articulated a logical bridge between the record and his decision to discredit Drs. Gagliardi, Tarr, and Smith-Gamble.

Although medical opinions by treating physicians are ordinarily entitled to controlling weight, the ALJ may discredit the treating physician after conducting a two-step inquiry: (1) whether controlling weight is appropriate and (2) what weight is appropriate if not controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c). For the first inquiry, the ALJ must follow the

Treating Physician Rule.  *Id.*  For the second inquiry, the ALJ must assign what weight to give the treating physician's medical opinions using factors enumerated by the Social Security Administration.  *Id.*; *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

Controlling weight is appropriate under the Treating Physician Rule if the treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).  If a treating physician's medical opinion is entitled to "controlling weight" it must be adopted. SSR 96-2p (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).  The Seventh Circuit has indicated this rule may not offer as much assistance to claimants as it may seem to do:

> Obviously if it is well supported and there is no contradictory evidence [to the treating physician's opinion], there   is no basis on which the administrative law judge, who is  not a physician, could refuse to accept it. Equally   obviously,   once well-supported contradicting   evidence   is   introduced,   the   treating   physician's evidence is no longer  entitled to controlling weight.

*Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006).  A treating physician's opinion is important because the treating physician has likely observed the claimant for the longest period of time and has a unique perspective to offer, but the importance placed on such evidence is tempered because it may also be unreliable if the doctor is overly sympathetic to the claimant and finds a disability too quickly.  *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (citing *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When an ALJ rejects a treating physician's credibility in favor of a non-treating physician, the treating physician's statement becomes just another piece of evidence and, to determine what weight to give it, the ALJ must consider the following: (1) the length, nature, and

extent of the treatment relationship; (2) the frequency of examination; (3) the supportability of the opinion; (4) the consistency of the opinion with the record; (5) the specialization of the treating source; and (6) other factors that tend to support or contradict the opinion.  *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527).  An ALJ does not need to conduct an exhaustive analysis under this "checklist," however.  The checklist is designed to provide ALJs with a framework for the analysis of what weight to give medical evidence from a treating physician.  *Hofslien*, 439 F.3d at 377.  On appeal, that analysis is reviewed under the general requirement that the ALJ provide a minimal, legitimate justification for accepting or rejecting specific evidence of a disability.  *Scheck*, 357 F.3d at 700.

**1.      Dr. Gagliardi**

The long-term treating physician, Dr. Gagliardi, found that Mr. Weathington's limitations were only consistent with less than sedentary criteria.  The ALJ expressly relied on two pieces of evidence to discredit Dr. Gagliardi: (1) Mr. Weathington's physical therapy reports showing a decrease in his pain and (2) non-treating physician Dr. Boyce's suggestion that Dr. Gagliardi's findings were "internally inconsistent."  Tr. at 27.

Initially, the ALJ made the following finding under his analysis of Mr. Weathington's past medical treatment: "[T]he claimant recently was discharged from physical therapy in October 2009 with an indication that all goals, both long and short term were met, including the reduction of his back and leg pain by 50% (Ex. P at 31-32)."  Tr. at 26.  The ALJ noted the slight increase in pain noted by Dr. Gagliardi in his December 2009 Multiple Impairment Questionnaire and compared that finding to Mr. Weathington's physical therapy records:  "Dr. Gagliardi indicates the claimant's pain is at a relatively high level in February 2009, and remains at that level or worse in December 2009.  However, as discussed above, the claimant's physical

therapy notes indicate he has been successful in reducing his pain 50%.  As such, I give Dr. Gagliardi's opinion(s) little weight."  Tr. at 27.  The ALJ's conclusion was not supported by the actual text of the physical therapy records.

Importantly, the findings made by the physical therapist, Dr. Babbit, do not match the ALJ's description.  The two relevant findings made by Dr. Babbit at the pages cited by the ALJ are her second and fifth long-term findings for Mr. Weathington: "2. [Patient] to have decreased back pain to 5/10 on a consistent basis. – MET . . . 5. [Patient] to have decreased bicep pain by 50% according to [patient] report. – MET."  Tr. at 1374.  The ALJ's analysis mischaracterizes this evidence for two reasons.  First, the pages cited contain no information about Mr. Weathington's purported leg pain.  Tr. at 1373.  Second, the pages cited by the ALJ do not include Mr. Weathington's initial back pain rating to provide context for the ALJ's determination that Mr. Weathington's back pain decreased by 50%.  In fact, Dr. Babbit's finding about Mr. Weathington's bicep pain was the only figure on those pages to discuss any sort of pain decreasing by 50%.  Therefore, the ALJ erroneously concluded Dr. Gagliardi should be discredited because Mr. Weathington's back and leg pain decreased by 50%.  As stated above, substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Dixon*, 270 F.3d at 1176.  Inaccurate summaries of the evidence do not amount to finding relevant evidence reasonably or adequately supportive of a conclusion to discredit a treating physician.  *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)) (stating that the ALJ's logical bridge must be accurate and logical).  Thus, the Court finds the ALJ's conclusion that Mr. Weathington's back and leg pain had decreased by 50% was not substantial evidence to discredit Dr. Gagliardi.  However, this is not the end of the analysis

because the ALJ also relied on alternative substantial evidence that was adequate to support his decision.

Specifically, the ALJ considered that Dr. Gagliardi filled out two Multiple Impairment Questionnaires in 2009 – one in February and one in December.  Tr. at 808-15, 1316-23.  In these questionnaires, Dr. Gagliardi noted that on a 10-point scale Mr. Weathington's pain was a 7 in February and increased to an 8 by December.  Dr. Gagliardi also indicated in February that Mr. Weathington could only sit for 1 hour a day and stand/walk for 0-1 hour per day.  In December, he indicated Mr. Weathington could sit for two hours per day, but the stand/walk option was unchanged.  The ALJ called these findings "confusing and internally inconsistent" but did not elaborate.  Tr. at 27.  Dr. Boyce's testimony, which the ALJ relied on, sheds light on this oblique reference.  Tr. at 27, 1584.  Dr. Boyce explained that it was "confusing" that Dr. Gagliardi would say Mr. Weathington could only sit and stand for an hour a day, each, yet able to lift twenty pounds occasionally, lift five pounds frequently, and carry ten pounds occasionally.  He also indicated at the hearing that the MRI Dr. Gagliardi relied upon in his first questionnaire did not support Dr. Gagliardi's conclusion that Mr. Weathington could only handle less-than-sedentary work.  Tr. at 1584.  Dr. Boyce indicated that the medical record did not reflect any reason to limit Mr. Weathington's standing and walking abilities.  Tr. at 1585.  Additionally, Dr. Boyce observed that one consulting physician who treated Mr. Weathington a mere three months before Dr. Gagliardi's first questionnaire identified his conditions as "not severe."[2]  Tr. at 872, 1585.  Dr. Boyce explained this discrepancy as being "all over the map."

The inconsistencies, both internal and external, underlying Dr. Gagliardi's opinions constitute substantial evidence, such that the ALJ was not required to give Dr. Gagliardi's opinions controlling weight under the Treating Physician Rule.  Substantial evidence is "such

---

[2] Dr. J. V. Corcoran, M.D., made this observation.  This doctor has not been mentioned in either party's brief.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176.  In this case, Mr. Weathington's ability, as stated by Dr. Gagliardi, to lift 20 pounds occasionally, lift five pounds frequently, and carry 10 pounds occasionally; his MRI, which Dr. Boyce said did not provide medical support for limiting Mr. Weathington's standing and walking abilities; and contrary medical evaluations all could lead a reasonable mind to accept the conclusion that Mr. Weathington is not disabled.  As such, the ALJ relied on substantial evidence in deciding not to give Dr. Gagliardi's opinions controlling weight.

In the portion of the decision where the ALJ discussed Dr. Gagliardi's findings, he noted that he gave "little weight" to the multiple impairment questionnaires, particularly in light of Dr. Boyce's testimony.  Although the ALJ's explicit analysis of his determination to give Dr. Gagliardi's opinions "little weight" was rather brief, the evidence cited by the ALJ indicates that he was aware of the factors weighing in favor of Dr. Gagliardi's opinion.  Namely, *Moss* considerations (1) and (2), from the list above, weigh in favor of affording Dr. Gagliardi's opinion greater weight.  Indeed, Dr. Gagliardi has treated Mr. Weathington regularly for a considerable amount of time.  Although the precise length of time Dr. Gagliardi treated Mr. Weathington was likely unclear to the ALJ,[3] the evidence indicates Dr. Gagliardi treated Mr. Weathington for a span of ten years as frequently as once every one to two months.  But these are the only two factors that weigh in favor of giving Dr. Gagliardi's opinions any weight.

The ALJ relied on substantial evidence to find that Dr. Gagliardi's opinions were not supported by the medical record, his findings were inconsistent with the medical record, and his specialty was not in an area that would require the ALJ to give him an extra degree of deference.

---

[3] This evidence in the record is unclear on this point.  Mr. Weathington's brief indicates Dr. Gagliardi began treating him in 2008.  Dr. Gagliardi's first questionnaire places this date in August 1999.  Dr. Gagliardi's second questionnaire puts this date at January 21, 1997.  Since this is the evidence cited by the ALJ, the Court presumes the ALJ understood that Dr. Gagliardi began treating Mr. Weathington in 1999.

Under consideration (3), as stated above, the ALJ explained, by citing Dr. Boyce, that the MRI Dr. Gagliardi used to support his first questionnaire did not give rise to the level of limitations Dr. Gagliardi ultimately found.   For consideration (4), the ALJ relied on Dr. Boyce's testimony demonstrating that the internal inconsistencies between Dr. Gagliardi's lifting and carrying allowances and the sitting and standing limitations.   Additionally, the consulting physician's classification of Mr. Weathington's condition as "not severe" was considerably different from Dr. Gagliardi's opinion that Mr. Weathington could only handle less-than-sedentary work. Consideration (5) was the least addressed out of all the considerations.   Only the questionnaires revealed that Dr. Gagliardi specialized in internal medicine.  Tr. at 815, 1623.   However, Mr. Weathington concedes that Dr. Gagliardi's area of expertise would not have supported affording him extra weight under this factor.  Dkt. 15 at 20.   Lastly, consideration (6) weighed against affording Dr. Gagliardi's opinions extra weight.   In the first questionnaire, he stated clinical findings were not applicable to support his diagnoses because the findings were subjective.  Tr. at 808.   An ALJ may discount a treating physician's medical opinions if they are based on a patient's subjective complaints.  *Ketelboeter*, 550 F.3d at 625 (citing *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).   Medical evidence based on Mr. Weathington's subjective claims were even more suspect because, as the ALJ pointed out earlier in the opinion, Mr. Weathington was 5/5 on Waddell signs, which indicated that his "responses [were] out of proportion to [the] stimulus" and were classified as an "over-reaction."  Tr. at 23.   Moreover, Dr. Gagliardi's opinions were in the form of answers to form questionnaires, which count as weak "checkbox" evidence when not supported by the medical record.  *Larson*, 615 F.3d at 751 (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.

1993)).  Therefore, the ALJ relied on substantial evidence to find that Dr. Gagliardi's opinions were entitled to no more than "little weight."

Even though the ALJ mischaracterized Dr. Gagliardi's physical therapy records, the ALJ relied on alternative substantial evidence, so this error was harmless.  An ALJ's error is harmless either when a "contrary determination would have to be set aside as incredible," i.e., when no reasonable trier of fact would have believed the testimony, or when the ALJ states he would have made the same decision even if the circumstance in question had been different and gives adequate support for that alternative.  *Allord v. Barnhart*, 455 F.3d 818, 821-22 (7th Cir. 2006).  In other words, if "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

In this case, even without the mischaracterized physical therapy evidence, the Court is convinced that no reasonable trier of fact would have found Mr. Weathington disabled.  Despite Mr. Weathington's assertion to the contrary, a non-treating physician's opinion can constitute substantial evidence if the non-treating physician's findings contradict the treating physician's. *Ketelboeter*, 550 F.3d at 625 (citing *White*, 415 F.3d at 659; *Skarbek*, 390 F.3d at 503).  As explained above, the ALJ gave great weight to Dr. Boyce testimony, which provided clear grounds for discrediting Dr. Gagliardi's opinions.

### 2.    Dr. Tarr

The ALJ relied on substantial evidence to give Dr. Tarr less-than-controlling weight.  As stated above, the ALJ must conduct a two-step inquiry before discrediting a treating physician: (1) whether controlling weight is appropriate and (2) what weight is appropriate if not controlling

weight.   20 C.F.R. §§ 404.1527(c), 416.927(c).   Controlling weight is appropriate under the Treating Physician Rule if the treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).

Dr. Tarr opined that Mr. Weathington suffered from post-traumatic stress disorder and generalized anxiety disorder, which limited his ability to work.  Tr. at 1325, 1329.  The ALJ was persuaded by Dr. Brooks' conclusion that only two of Mr. Weathington's various mental diagnoses were supported by medical evidence—i.e., the diagnoses of depression and anxiety were supported and the diagnoses of personality disorder, post-traumatic stress disorder, cognitive disorder, amnestic disorder, and dementia were not—and that they were moderate at worst.  Tr. at 25.  The ALJ noted that Dr. Tarr examined Mr. Weathington only one time, back in December 2008.  As such, the ALJ found Dr. Tarr's opinions were inconsistent with the medical record and adequately stated the ALJ's rationale for discrediting Dr. Tarr under the Treating Physician Rule.

Although the ALJ did not specifically state he was using the *Moss* checklist above, he addressed the considerations in substance.  The ALJ considered Dr. Tarr's brief treatment of Mr. Weathington, which squarely addresses considerations (1) and (2): the length of the treatment was short, and the frequency was a single examination.  The logical inference from this brief treatment is that Dr. Tarr did not have the opportunity to support his medical opinion with multiple observations.  This casts light on consideration (3).  The ALJ identified that Dr. Tarr's primary diagnosis of post-traumatic stress disorder was not diagnosed at all by other medical professionals examining Mr. Weathington. *See* Tr. at 619 (Dr. Carrie Dixon, Ph.D, not diagnosing Mr. Weathington with post-traumatic stress disorder); Tr. at 904 (Greg Lynch, HSPP,

not diagnosing Mr. Weathington with post-traumatic stress disorder); Tr. at 1362 (Dr. Stephanie Callaway, Psy.D, HSPP, stating Mr. Weathington does not meet the criteria for post-traumatic stress disorder); *but see* Tr. at 730 (Dr. Smith-Gamble, M.D. diagnosing post-traumatic stress disorder); Tr. at 25, 27 (ALJ finding Dr. Smith-Gamble non-credible).  Stated differently, Dr. Tarr's diagnosis is simply inconsistent with the medical record under consideration (4).  The ALJ was cognizant of Dr. Tarr's specialty, so consideration (5) has been addressed.  Lastly, the ALJ addressed consideration (6) when he noted Dr. Tarr's observation that the Minnesota Multiphasic Inventory profile he relied on was "probably invalid."  Tr. at 24.  The ALJ found it "inexplicable" that Dr. Tarr would rely on a "probably invalid" psychological exam.  Tr. at 24. The Court does not reweigh these considerations on appeal.  Therefore, the ALJ has adequately articulated his rationale for discrediting Dr. Tarr's opinions and embracing the medical opinions of non-treating physician Dr. Brooks.

### 3. Dr. Smith-Gamble

The ALJ was not required to give Dr. Smith-Gamble's opinions controlling weight under the Treating Physician Rule.  Controlling weight is appropriate under the Treating Physician Rule if the treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).  As discussed below, Dr. Smith-Gamble's medical evaluations were not consistent with each other, let alone the remaining medical evidence.  Thus, her medical opinions were not entitled to controlling weight under the Treating Physician rule.

The ALJ did not articulate all six *Moss* considerations for Dr. Smith-Gamble as he did for Dr. Tarr, but the considerations he did articulate were sufficient to discredit Dr. Smith-Gamble's

medical opinions.  Dr. Smith-Gamble originally noted Mr. Weathington suffered from a variety of mental impairments that moderately limited his ability in many areas.  However, less than a year later, Mr. Weathington returned to Dr. Smith-Gamble because his lawyers wanted "a different opinion."  Tr. at 27, 1391.  Dr. Smith-Gamble's second opinion contained "essentially the same source statement" but now indicated Mr. Weathington's limitations were marked and not moderate.  Tr. at 27.  This difference is significant because the ALJ indicated moderate limitations would not have precluded Mr. Weathington from participating in "basic work activity" and would not have been inconsistent with the remainder of Mr. Weathington's medical record.

Importantly, the ALJ indirectly addressed *Moss* considerations (2) through (5).  The ALJ noted Mr. Weathington's visit to Dr. Smith-Gamble to ask for a different opinion occurred ten months after his last visit.  Therefore, the frequency under consideration (2) was low.  The ALJ also noted that Dr. Smith-Gamble's second opinion relied on the same source statement yet reached a different result.  This implies that Mr. Weathington's medical record with respect to Dr. Smith-Gamble's opinions is inconsistent; Dr. Smith-Gamble essentially relied upon the same evidence with two different outcomes.  Thus, the supportability and consistency under considerations (3) and (4) are rather limited.  Lastly, the ALJ recognized that Dr. Smith-Gamble was a psychiatrist, so he was cognizant of Dr. Smith-Gamble's specialty for the purposes of consideration (5).  Although the ALJ did not address considerations (1) or the catch-all (6), he still provided a minimally articulated, legitimate logical bridge between the medical record and his decision to discredit Dr. Smith-Gamble.

Thus, the ALJ possessed sufficient grounds to give less weight to treating physicians Drs. Gagliardi, Tarr, and Smith-Gamble than he gave to non-treating Drs. Boyce and Brooks.

**B.     The ALJ failed to address the VA disability determination, but this error was harmless in light of other evidence.**

Mr. Weathington correctly asserts that the ALJ failed to build a logical bridge between the VA's disability finding and his own finding of no disability for the purposes of Social Security.   On March 22, 2006, the VA awarded Mr. Weathington a non-service-connected pension due to inability "to secure and follow a substantially gainful occupation due to disability."  Tr. at 1305-06.  The VA was persuaded by evidence showing Mr. Weathington suffered from sleep apnea, amnestic disorder with personality disorder, arthritis of the lumbar spine and right sacroiliac joint, and hypertension.  Tr. at 1305-06.  However, the ALJ did not address the impact of this finding on his own decision anywhere in his opinion.[4]   The Commissioner claims the ALJ was not required to give the VA's finding of inability to secure gainful employment any weight but cites no authority to support this position.   Indeed, Mr. Weathington directs the Court to one of the Commissioner's own rulings, which states that although final authority regarding a Social Security disability determination lies with the Commissioner, the Commissioner is still required to evaluate all of the evidence in the record, "including decisions by other governmental and nongovernmental agencies."   SSR 06-03p (citing 20 C.F.R. §§ 404.1512(b)(5), 416.912(b)(5)).   Moreover, the Seventh Circuit has rejected the Ninth Circuit's approach to give the disability determinations by the VA "great weight," but it still says the VA's disability determination is entitled to "some weight."  *Allord*, 455 F.3d at 820 (citing *McCartey v. Massanari*, 298 F.3d 1072, 1075-76 (9th Cir. 2002)).

---

[4] The ALJ indicated he was aware of the VA benefits, yet he did not address their impact: "Next, apparently buoyed by his notification of some veteran's benefits . . . the claimant was noted to be happy."  This does not count as a minimal, legitimate articulation of the ALJ's rationale to distinguish the VA's finding that Mr. Weathington is disabled from this Social Security case.

Having determined the ALJ should have evaluated the VA determination, the Commissioner is correct in his assertion that the ALJ's review of medical opinions by VA-employed physicians suffices to overcome the weight ordinarily given to the VA.[5]   The VA denied disability benefits for service-connected degenerative joint disease of the lumbar spine, heart murmur, depression, chest pain, left arm pain, and hemorrhoids, but as described above, it still awarded non-service-connected pension due to disability.   Tr. at 1305-06.   The Seventh Circuit gives VA determinations "some weight" instead of "great weight" because there are differences in the standards of the two administrations.   Applying these principles, the ALJ would not have been required to adopt the VA's determination on its face.   *Allord*, 455 F.3d at 820 (citing *McCartey*, 298 F.3d at 1075-76).   As such, the ALJ would necessarily have had to review the findings that the VA found persuasive.   The ALJ did this by reviewing the opinions of numerous VA physicians, including Drs. Gagliardi, Tarr, and Smith-Gamble.

**C.     The ALJ's RFC finding was supported by substantial evidence.**

In the step four analysis, an ALJ must determine which of the claimant's past relevant work he remains able to perform – that is, the RFC.   Then, the ALJ must pose a hypothetical to a vocational expert that asks what jobs a person with the claimant's RFC could still do in the surrounding economy.   All of this requires that the ALJ make creditable findings in the medical record.   In this case, the medical opinions of Drs. Gagliardi, Tarr, and Smith-Gamble indicated that Mr. Weathington possessed medical limitations that would inhibit his ability to work.   However, as described above, the ALJ properly weighed their opinions and found that non-treating physicians Drs. Boyce and Brooks were entitled to the "most probative weight."   Tr. at 26.   The remaining doctors received "less weight."   Tr. at 26.

---

[5] It appears that at least Drs. Gagliardi, Tarr, and Smith-Gamble were employed by the VA.

As long as an ALJ relies on substantial evidence, this Court will not set aside his RFC finding.  RFC findings are solely within the discretion of the Commissioner as long as they are based on substantial evidence.  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  Here, the ALJ properly discredited Drs. Gagliardi, Tarr and Smith-Gamble and the ALJ's reliance on Drs. Boyce's and Brooks' testimony was supported by substantial evidence.  For example, the ALJ stated Dr. Boyce's findings were well supported by the medical record in part because the objective findings offered by Mr. Weathington "do not demonstrate the requisite neurological deficits which result in the claimant's inability to ambulate effectively or perform gross and fine motor movements."  Tr. at 19.  As to Dr. Brooks, for example, he pointed out that even the examining doctors who noted limitations admitted that the limitations were mild to moderate and showed Mr. Weathington was exaggerating his symptoms.  Where there was doubt as to the impact of these mild to moderate limitations, the ALJ viewed "the evidence in a light most favorable" to Mr. Weathington and "determined some mental limitations [were] appropriate." Tr. at 25.  Therefore, the ALJ's determination that Mr. Weathington could perform "light work," with the limitations noted above in Section III, was supported by substantial evidence.

**D.      The ALJ did not provide a flawed hypothetical to the Vocational Expert.**

In his final point, Mr. Weathington contends that the ALJ's step five analysis is flawed because he should have asked the VE a hypothetical that included the following as limitations: necessity of missing work more than three times per month; moderate problems with social functioning; and moderate problems with concentration, persistence, and pace.  Dkt. 15 at 24. An ALJ must include limitations he finds credible in his hypothetical to the VE.  *Schmidt v. Astrue*, 496 F.3d 833, 845-46 (7th Cir. 2007).

Here, the ALJ posed an appropriate hypothetical to the VE.  The ALJ properly excluded the proposed limitation of Mr. Weathington needing to miss work more than three times per month.  Mr. Weathington bases his argument that this limitation should have been included in the hypothetical on the opinions of his treating physicians.  As stated above, the ALJ properly did not credit Drs. Gagliardi, Tarr, and Smith-Gamble.  He gave more weight to the opinions of the non-treating physicians, who did not identify Mr. Weathington as having such a limitation. Therefore, the ALJ was not required to include in his hypothetical a limitation that Mr. Weathington would need to miss more than three days of work per month.

The ALJ did not need to precisely articulate to the VE Mr. Weathington's remaining proposed limitations because the ALJ had already incorporated them into the hypothetical.  The Commissioner rightly points out that the ALJ's hypothetical included the limitation that Mr. Weathington have no contact with the general public and only superficial contact with coworkers and supervisors after an initial training period.  Dkt. 20 at 9 (citing Tr. 21, 1630-31).  This is consistent with the ALJ's finding that Mr. Weathington has moderate problems with social functioning.  Finally, the ALJ posed a limitation that Mr. Weathington would only be able to engage in routine, repetitive tasks.  This sufficiently incorporated limitations of concentration, persistence, and pace because several examining psychologists acknowledged that Mr. Weathington could engage in simple, routine work despite his mental limitations.  Tr. at 620-24, 634, 846, 873-77.  As such, all of Mr. Weathington's remaining proposed limitations had already been incorporated into the ALJ's hypothetical, so his argument that the ALJ should have articulated these limitations more precisely is unpersuasive.

## V.   **CONCLUSION**

For the foregoing reasons, the final decision of the Commissioner of the Social Security

Administration is **AFFIRMED**.

**SO ORDERED**.

Date: 09/20/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jennifer L. Risk
BINDER AND BINDER, PC
fedcourt@binderandbinder.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov